COMMONWEALTH OF MASSACHUSETTS

NORFOLK, SS.

SUPERIOR COURT
C.A. NO.

17  0474

| | |
|---|---|
| DAVID FAIRWEATHER<br>CAROL FAIRWEATHER<br><br>*Plaintiffs*<br><br>v.<br><br>WELLS FARGO HOME MORTGAGE<br><br>*Defendant* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT

1. Plaintiffs C. David C. Fairweather and Carol Fairweather are the homeowners and mortgagors of 55 Silver Avenue Bellingham, MA 02019 ("Plainitffs").

2. Defendant, Wells Fargo Home Mortgage ("Defendant") was the servicer of Plaintiffs' mortgage the foreclosing entity.

## JURISDICTION

3. Jurisdiction and Venue is proper in this Court in that a substantial part of the events or omissions giving rise to this claim have occurred, and the real property that is the subject of the action is situated within the Commonwealth of Massachusetts.

4. This Honorable Court has subject matter jurisdiction as the subject property at issue is located at 22 Silver Avenue, Bellingham, MA 02019, and the Plaintiffs reside at said subject property.

5.   Venue is proper in the Honorable Court in that the events or omissions giving rise to this claim have occurred, and the real property that is subject of the action is situated within the Commonwealth of Massachusetts.

## FACTUAL ALLEGATIONS

6.   On April 10, 2007, Plaintiffs granted a mortgage to World Savings Bank, FSB to secure a promissory granted to World Savings Bank in the amount of $269,400.00. The Mortgage was recorded in the Norfolk County Registry of Deeds on April 20, 2007 in Book 24725 at page 496.

7.   World Bank was a California Corporation with a principal place of business in Oakland California. World Bank originated loans through mortgage brokers and other intermediaries. World Bank offered adjustable rate home loans to borrowers with less than prime credit at low "teaser" rates which increased almost immediately, called "Adjustable Rate Mortgage Pick-A-Payment Loan" loans.

8.   World Bank's Adjustable Rate Mortgage Pick-A-Pay Loan began with a low introductory rate for a brief period, sometimes only for one month, and then transitioned to an ARM loan. The Adjustable Rate Mortgage Pick-A-Pay Loan loans' interest rates adjust every month based on fluctuations of the corresponding index that World Bank used to calculate the rate.

9.   Under World Bank's Adjustable Rate Mortgage Pick-A-Pay Loan, borrowers had multiple payment options each month, including a minimum payment that covered none of the principal and only some of the interest due, an interest-only payment, and a payment which is amortized to pay off the loan in a fixed number of years.

10.  Borrowers who paid the minimum payment option experienced a continual increase in the principal balance of their loan, referred to as "negative amortization". This eroded any equity the borrower had in the property while simultaneously causing required payments to increase.

11. The Adjustable Rate Mortgage Pick-A-Pay Loan loans included a negative amortization cap, typically 125%, at which point a borrower's minimum payment would be recast to the fully-amortized monthly payment, creating "payment shock" for the borrower, where payments could more than double the original minimum payment within as few as three years of the loan origination.

12. During 2004, World Bank was a large lender in Massachusetts and the nation, and a large subprime lender in Massachusetts. Although executives at World Bank knew in 2004 that most of their Adjustable Rate Mortgage Pick-A-Pay Loan customers were paying only the minimum required payments, creating overwhelming risk of payment shock and a high rate of delinquency, World Bank continued to aggressively market the product throughout 2004.

13. In originating Adjustable Rate Mortgage Pick-A-Pay Loan loans, World Bank engaged in unfair and deceptive business practices against its customers, including Fairweather, by inter alia, artificially inflating borrowers' stated incomes, bank account values, and property values, in order to qualify borrowers for loan it knew or should have known the borrowers would be unable to ever repay.

14. Fairweather's loan is an Adjustable Rate Mortgage Pick-A-Pay Loan with an adjustable interest rate, prepayment penalty clause, and negative amortization clause.

15. In 2006 World Bank became subject to the supervision of the Office of Thrift Supervision.

16. As delinquencies and foreclosure rate skyrocketed, World Bank eventually failed and its assets were splintered and acquired by various entities, including Wells Fargo.

17. On or about September 2, 2010 Wachovia a division of Wells Fargo sent Fairweather a loan modification offer.

18. The terms of this loan modification continued to be predatory in nature because any reasonable person could predict that based on the income that Fairweather provided for the loan modification Fairweather could never afford payment increases and interest rate that more than doubled over the course of 5 years.

19. Subsequent to this loan modification in 2010, Defendant Wells Fargo took over the loan as well as its predatory terms and has failed to offer Fairweather a loan modification that he can afford despite several requests and years in which Fairweather remained current on his payments. Wells Fargo continues to enforce the predatory terms of the loan and the loan modification, as well as mischaracterizing the loan as a "fixed term" loan during the modification review process, with the intention of foreclosing on Fairweather's home under terms that he could never comply.

20. Defendant Wells Fargo violated and continues to violate 12 CFR Part 1024 Real Estate Settlement Procedures Act (Regulation X), specifically § 1024.41(g) which states that if a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option.

21. Wells Fargo "dual tracked" Plaintiff's request for loss mitigation in violation of Federal Law, Regulation X.

22. Wells Fargo was the servicer for the mortgage loan secured by the property at 55 Silver Avenue, Bellingham, RI 02879.

23. Due to an unforeseen financial hardship, Plaintiffs' missed a number of mortgage payments on the mortgage loan. Plaintiffs contacted Wells Fargo to apply for a loan modification but ran into an number of difficulties as the servicer would repeatedly request the same documents that had been previous and Plaintiffs would need to start the process over.

24. On or around January 3, 2017, Plaintiffs Fairweather received notice that their home was scheduled to be auctioned in a foreclosure sale on February 3, 2017.

25. Plaintiffs immediately contacted legal counsel to assist with stopping the pending foreclosure and apply for a loan modification.

26. On January 11, 2017, counsel for the Plaintiffs, in accordance with the Wells Fargo checklist for loan modifications, sent a complete loan modification application by email directly to Wells Fargo Loss Mitigation Department.

27. The loan modification application included Wells Fargo's completed checklist, a signed and dated Uniform Borrower's Assistance Form, Wells Fargo's Expense Sheet, HAMP Gov. Data Form, Wells Fargo's Non-Borrower Occupancy & Income Certification, Hardship Letter, 4506-T IRS Forms (signed and dated), Paystubs for both parties, 2014 & 2015 Tax Returns for both parties (signed and dated), contribution letter and supporting documentation, Bank statements for 2 months (all accounts), and an attorney authorization form, signed and dated, notifying Wells Fargo that Plaintiffs were represented by counsel.

28. The loan modification package was sent approximately 23 days before the scheduled foreclosure sale.

29. On or about January 12, 2017, Plaintiffs' counsel confirmed with a representative at Wells Fargo that the package was received. The agent told counsel the package would be reviewed and if additional information was required, counsel would be contacted.

30. Plaintiffs' counsel followed up with Wells Fargo loss mitigation department in mid-January and was asked to resubmit an attorney authorization form. Counsel sent the additional authorization form. An agent from Wells Fargo Loss Mitigation stated the package was being reviewed. The agent did not indicate any additional documents were necessary at that time.

31. Wells Fargo did not contact counsel or Plaintiffs regarding the status of the loan modification application.

32. Wells Fargo did not provide the thirty (30) day appeal period required in the event of a HAMP loan modification denial.

33. Wells Fargo caused a foreclosure sale to commence on January 3, 2017. Wells Fargo was the alleged successful bidder at said sale.

34. Plaintiffs' counsel did not receive any notices in regards to the status of the loan modification

35. Plaintiffs' counsel was never notified that any documents were outstanding.

36. In addition, in a letter dated January 25, 2017, Wells Fargo states that they will not review the loan for mortgage assistance option again" despite the last time Plaintiff was reviewed for mortgage assistance option was seven years prior in 2010.

37. On February 1, 2017 the Plaintiffs' counsel submitted a formal written appeal letter to Wells Fargo's decision to not review Fairweather for mortgage assistance options.

38. Wells Fargo failed to allow the 30-day appeal period required when denying a loan modification.

39. Wells Fargo violated Regulation X by failing to consider the request for the loan modification that was submitted on January 11, 2017 prior to the foreclosure and well within the required time period to require Wells Fargo to consider the request and prohibit dual-tracking of the loan with the pending foreclosure.

40. Plaintiffs allege that by setting a foreclosure sale date and conducting the foreclosure while Plaintiffs were in review for loss mitigation options, Wells Fargo violated 12 CFR Part 1024 Real Estate Settlement Procedures Act (Regulation X), specifically § 1024.41(g) which states that; If a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale unless: (1) The servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) The borrower rejects all loss mitigation options offered by the servicer; or (3) The borrower fails to perform under an agreement on a loss mitigation option.

## COUNT I
## BREACH OF DUTY OF GOOD FAITH

41. The preceding allegations are incorporated by reference

42. Massachusetts law mandates that a foreclosing mortgagee has a duty to act in good faith and use reasonable diligence to protect the interest of a mortgagor prior to exercising a power of sale. W. Roxbury Co-op. Bank v. Bowser, 324 Mass 489, 492 (1949).

43. In order to comply with this duty, a mortgagee must review a homeowner's modification application in good faith prior to foreclosure. In re Cruz, 446 B.R. 1, 4-5 (Bnkr. D. Mass. 2011) (holding that a homeowner had a substantial likelihood of success in demonstrating that a foreclosing mortgagee breached this duty by commencing foreclosure while a loan modification application was pending, in violation of HAMO guidelines); Blackwood v. Wells Fargo Bank, N.A., 2011 WL 1561024 (D. Mass) (denying mortgagee's motion to dismiss based upon homeowner's claim that mortgagee breached its' duty of good faith and reasonable diligence by foreclosing on property while a complete loan modification application was pending).

44. Defendants failed to review Plaintiff for a modification in good faith by failing to notify Plaintiff of the completeness of his application, repeatedly requesting information and documentation that Plaintiff had already provided in order to hinder Plaintiff' loss mitigation efforts, and by ignoring the fact that Plaintiff provided a complete application as well as any back up documentation prior to the foreclose sale. Instead, Defendants ignored the documentation and complete application Plaintiff provided and proceeded with foreclosure on his home despite Plaintiff repeatedly providing Defendants with all required information and documentation to compete a loss mitigation review. Furthermore, Plaintiff was never provided with an accurate denial or real reason as to why Defendant proceeded with foreclosure on huis property when all information and documentation was provided completely and accurately.

45. Plaintiff suffered damages due to Defendants' breach of duty of good faith and reasonable diligence including but not limited to the loss of equity in his home, increased

mortgage arrears, increased cost of any modification he may ultimately be approved for, damages to his credit, emotional distress due to losing his home to foreclosure, and attorney's fees and costs.

## COUNT II

**Violation of 12 CFR Part 1024 Real Estate Settlement Procedures Act (Regulation X), Specifically § 1024.41(G) Against Wells Fargo**

46. Plaintiffs repeat and re-allege every allegation above as if set forth herein in full.

47. Wells Fargo has violated 12 CFR part 1024 Real Estate Settlement Procedures Act (Regulation X), specifically § 1024.41(g) which states that if a borrower submits a complete loss mitigation application after a servicer has made the first notice or filing required by applicable law for any judicial or non-judicial foreclosure process but more than 37 days before a foreclosure sale, a servicer shall not move for foreclosure judgment or order of sale, or conduct a foreclosure sale, unless: (1) the servicer has sent the borrower a notice pursuant to paragraph (c)(1)(ii) of this section that the borrower is not eligible for any loss mitigation option and the appeal process in paragraph (h) of this section is not applicable, the borrower has not requested an appeal within the applicable time period for requesting an appeal, or the borrower's appeal has been denied; (2) the borrower rejects all loss mitigation options offered by the servicer; or (3) the borrower fails to perform under an agreement on a loss mitigation option.

48. Wells Fargo "dual tracked" Plaintiffs' loss mitigation request with attempts to foreclose the subject mortgage, in violation of Federal Law, as noted above.

49. Plaintiffs are entitled to a stay of and/or rescission of all foreclosure action until such time as Wells Fargo has made a determination of Plaintiffs' eligibility for any loss mitigation option, together with costs of this action, and all other remedies this Court finds just.

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs respectfully request the following relief:

a. Grant a permanent or final injunction enjoining Wells Fargo from proceeding with the pending eviction;

b. Order Wells Fargo to review the Plaintiffs for loss mitigation options, including but not limited to review for a loan modification, and order rescission of the foreclosure sale pending review of all available loss mitigation options;

c. Award Plaintiffs the costs of defending this action, including the fees, costs, together with reasonable attorneys' fees;

d. Grant Defendants such other and further relief as this Court finds necessary and proper.

**PLAINTIFFS DEMAND A TRIAL BY JURY ON ALL COUNTS OF THE COUNTERCLAIM SO TRIABLE.**

Respectfully submitted,<br>
Plaintiffs,<br>
By their Attorney,<br>
<br>
/s/ Todd S. Dion<br>
Todd S. Dion Esq. (#6852)<br>
1599 Cottage Avenue, Ste 202<br>
Quincy, MA 02169<br>
401-965-4131 Phone<br>
401-353-1231 Fax<br>
toddsdion@msn.com

March 22, 2017

## VERIFICATION OF COMPLAINT

I, David C. Fairweather, Plaintiff in the above-captioned action, hereby depose and state that I have read and subscribed to the foregoing complaint, and the facts set forth therein are based on my own personal knowledge and are true and correct.

Signed under the penalties of perjury on March 22, 2017.

Date:                                                          Respectfully submitted,

                                                               David C. Fairweather

                                                               _____